**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
Richmond Division

| | |
|---|---|
| **S**YLVIA VAN DYKE and DOUGLAS ALVARADO, *individually and on behalf of a class of similarly situated individuals*, | : : : : Civil Action No. 3:17cv483 |
| Plaintiffs, | : : |
| v. | : : |
| MCLEAN MORTGAGE CORPORATION, | : : |
| Defendant. | : : |

## CLASS ACTION COMPLAINT

COME NOW Plaintiffs, Sylvia Van Dyke and Douglas Alvarado (collectively "Plaintiffs"), individually and on behalf of a class of similarly situated individuals, by counsel, and for their Complaint against Defendant, they allege as follows:

## PRELIMINARY STATEMENT

1. Originally enacted in 1974, the Equal Credit Opportunity Act ("ECOA") was designed to prohibit discrimination against credit applicants on the basis of "race, color, religion, national origin, sex or martial status, or age." 15 U.S.C. § 1691(a). Two years later, Congress amended the ECOA to include provisions requiring creditors to provide written notice to consumers regarding the specific reasons why an adverse action was taken against the consumer's credit application. *See* 15 U.S.C. § 1691(d)(2)–(3).

2. By requiring creditors to give written notice—and the specific reasons why an adverse action was taken—the new legislation served two important purposes. First, the notice requirements provide "a strong and necessary adjunct to the antidiscrimination purpose" of the ECOA because transparency discourages creditors from engaging in discriminatory practices. S.

Rep. No. 94–589, at 4 (1976). Second, the notice requirements "fulfill a broader need" by providing rejected applicants with "valuable educational benefit" because consumers "should benefit from knowing" the reasons for their denial, especially where creditors may have acted on incomplete or inaccurate information. *Id*.

3. This lawsuit arises from Defendant's failure to comply with the adverse action requirements of the ECOA, 15 U.S.C. § 1691, *et seq.* and the Virginia Equal Credit Opportunity Act (VECOA), Code of Virginia §59.1-21.19, *et seq.* Instead of truthfully explaining why consumers do not meet Defendant's standards, Defendant misrepresents that it denied consumers on the basis of a "withdrawn application." Defendant thus deprives consumers of valuable congressionally mandated information and increases the risk that it may deny consumers for purposes prohibited by the ECOA.

4. Plaintiff Van Dyke also alleges an individual claim against Defendant for violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681b(f). Section 1681b(f) prohibits a user from obtaining a report unless it is for a specific purpose enumerated in § 1681b(a)(3). Defendant had a permissible purpose to obtain Plaintiff Van Dyke's credit report when she initially applied to refinance her home. However, Defendant inexplicably continued to obtain credit reports regarding Plaintiff Van Dyke, including more than a month after it denied her mortgage application. As a result, Defendant invaded Plaintiff's privacy and caused reductions to Plaintiff's credit scores.

## JURISDICTION AND VENUE

5. This Court has jurisdiction pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1691e.

6. Venue is proper in this District and Division because a substantial part of the events and omissions giving rise to the claim occurred in this District and Division and both

Parties reside in this District and Division.

## PARTIES

7. Plaintiff, Sylvia Van Dyke ("Van Dyke"), is a "person" as defined by Code of Virginia §59.1-21.19 and an "applicant" for the purposes of the ECOA and VECOA.

8. Plaintiff, Douglas Alvarado ("Alvarado"), is a "person" as defined by Code of Virginia §59.1-21.19 and an "applicant" for the purposes of the ECOA and VECOA.

9. Defendant McLean Mortgage Corporation ("Defendant" or "McLean Mortgage") is a mortgage originator with a principal place of business at 11325 Random Hills Road, Suite 400, Fairfax, Virginia 22030. Defendant is a "Creditor" for the purposes of the ECOA and VECOA and a "user" for the purposes of the FCRA.

## FACTS

**A. Purpose and Requirements of the ECOA.**

10. In 1974, Congress enacted the ECOA "to eradicate credit discrimination waged against women, especially married women whom creditors traditionally refused to consider for individual credit." *Mays v. Buckeye Rural Elec. Coop.,* 277 F.3d 873, 876 (6th Cir. 2002) (quotation marks omitted).

11. After hearing concerns from racial minorities, the elderly, and other groups, Congress expanded the ECOA's protection in 1976 to encompass discrimination for other characteristics—such as race, religion, national origin, and age—to ensure the availability of credit to all applicants who were routinely discriminated against by lenders. *RL BB Acquisition, LLC v. Bridgemill Commons Dev. Grp., LLC*, 754 F.3d 380, 383 (6th Cir. 2014) (citing S. Rep. 94-589, at 3).

12. With the amendments, Congress not only expanded the scope of those protected by the ECOA, but it also enhanced the strength of those protections through the enactment of the ECOA's notice requirements.

13. In doing so, Congress expressly identified the notice requirements as one of the bill's "most important provisions" because it established "for the first time in federal legislation" the right of applicants "to obtain a statement of reasons for the action taken against them." S. Rep. 94-589, at 2.

14. In particular, the ECOA requires creditors to provide "a statement of reasons" to each applicant whenever the creditor takes an "adverse action," which is defined in relevant part as a "refusal to grant credit in substantially the amount or on substantially the terms requested in an application unless the creditor makes a counteroffer . . . ." 15 U.S.C. § 1691(6).

15. A creditor satisfies the notice requirements by either "providing a statement of reasons as a matter of course," or giving the applicant written notice of the advese action which discloses the applicant's right to a statement of reasons and who to contact so the statement may be obtained. 15 U.S.C. § 1691(d)(2).

16. A statement of reasons meets the requirements of the ECOA "only if it contains the specific reasons for the adverse action taken." 15 U.S.C. § 1691(d)(3).

**B.  McLean Mortgage Misrepresented the Reasons for the Adverse Action Taken Against Van Dyke.**

17. On or around August 29, 2016, Van Dyke spoke with John Masci ("Masci"), a mortgage advisor employed by McLean Mortgage, who advised her to take her house off the market and to refinance her loan so she could keep the home and save money.

18. On or around August 31, 2016, Van Dyke applied for refinancing with McLean Mortgage, who then obtained a copy of her credit report from Credit Plus—a company

4

specializing in the assembly of information in the databases of Equifax, Experian, and Trans Union for the purpose of reselling the information to mortgage companies.

19. After Masci reviewed Van Dyke's credit reports, he instructed Van Dyke to pay off several accounts to reduce her debt-to-credit ratio, which would increase her credit score and, thus, make her eligible for a lower interest rate.

20. Acting on the advice of Masci, Van Dyke withdrew $23,663 from a retirement account on September 13, 2016, and used it to pay off a credit card with a balance of $16,533. Van Dyke used the remaning funds to pay federal and state taxes arising from the withdrawl.

21. On October 10, 2016, Masci e-mailed Van Dyke a copy of the appraisal for her home. Masci wrote that the appraisal "came in lower than the 465k we were looking for." To that end, Masci continued, "I'm not sure at this point how I can make this work for you."

22. In response, Van Dyke sent an e-mail asking if she would receive the $927 paid to McLean Mortgage to process the loan "since it [was] not going to work." Van Dyke further disputed some of the information in the appraisal regarding "comps" used for the appraisal.

23. In response, Masci indicated, "Yes, we will refund you the $927 ASAP."

24. Over the next several weeks, Van Dyke attempted to convince Masci that the appraisal undervalued her property.

25. On October 25, 2016, Masci wrote Van Dyke an e-mail indicating, "I think it's best that we part ways on the refinance. . . . The bottom line is we cannot make this refinance work under the terms originally agreed upon based on the current value of the property." (Oct. 25, 2016 E-mail, attached as Exhibit. 1).

26. On or around December 12, 2016, Van Dyke received a Statement of Credit Denial, Termination or Change ("Adverse Action Notice") indicating that her loan was being denied. (Dec. 12, 2016 Adverse Action Notice, attached as Exhibit 2).

27. The Adverse Action Notice indicated that the sole reason for the credit denial was that Van Dyke withdrew her application.

28. Defendant's Adverse Action Notice violated § 1691(d)(3) of the ECOA because it misrepresented and failed to accurately provide the specific reasons for the adverse action taken.

29. Upon information and belief, the Adverse Action Notice is a form letter used by McLean Mortgage when it takes adverse action against consumers who applied for financing with McLean Mortgage.

**C. McLean Mortgage Misrepresented the Reasons for the Adverse Action Taken Against Alvarado.**

30. On or around April 21, 2016, Alvarado applied for a home loan with McLean Mortgage. Plaintiff sought a loan of approximately $180,000.

31. After reviewing his credit reports, an employee of McLean Mortgage, Jeremy Johnson, informed Plaintiff that he needed a down payment of $10,000 in order to qualify for the $180,000 loan.

32. On or around August 17, 2016, Alvarado received a Statement of Credit Denial, Termination or Change ("Adverse Action Notice") indicating that his loan was being denied. (Apr. 17, 2016 Adverse Action Notice, attached as Exhibit 3).

33. The Adverse Action Notice indicated that the sole reason for the credit denial was that Alvarado withdrew his application.

34. This was false—Alvarado never withdrew his application nor suggested an intent to do so to McLean Mortgage.

35. Defendant's Adverse Action Notice violated § 1691(d)(3) of the ECOA because it misrepresented and failed to accurately provide the specific reasons for the adverse action taken.

**D.    McLean Mortgage Impermissibly Obtained Van Dyke's Consumer Reports.**

36. On December 4, 2016, Van Dyke obtained a copy of her credit report from Equifax, which showed that McLean Mortgage obtained her credit report from Equifax on November 10, 2016—more than two weeks after Masci informed Van Dyke that she could not qualify for the refinancing.

37. As of November 10, 2016, Van Dyke did not have a credit relationship with McLean Mortgage, nor did she authorize McLean Mortgage to pull her report.

38. Because it denied her application for financing, McLean Mortgage knew or should have known that it did not have a permissible purpose to obtain Van Dykes's credit reports.

39. As a result of its impermissible acquisition of Van Dyke's reports, McLean Mortgage willfully violated § 1681b(f) of the FCRA.

**COUNT ONE: VIOLATION OF EQUAL CREDIT OPPORTUNITIY ACT**
**15 U.S.C. § 1691(d)**
**Class Claim**

40. Plaintiffs restate each of the allegations in the preceding paragraphs as if set forth at length herein.

41. **The ECOA Class**. Pursuant to Fed. R. Civ. P. 23, Plaintiffs bring this action individually and on behalf of a class initially defined as follows:

> All natural persons who: (1) applied for credit to McLean Mortgage within the preceding five years; (2) were not offered credit by McLean Mortgage; and (3) were provided with an ECOA adverse action notice by McLean Mortgage that indicated that the principal reason for the denial was a withdrawn application.

42. **Numerosity, Fed. R. Civ. P 23(a)(1).** Upon information and belief, Plaintiffs allege that the class is so numerous that joinder of all is impractical. The names and addresses of the class members are identifiable through the internal business records maintained by Defendant, and the class members may be notified of the pendency of this action by published and/or mailed notice. The Fourth Circuit has held that classes consisting of as few as 18 members will satisfy the numerosity requirement. Defendant's procedure for generation of the subject form letter appears to be automated and systemic, evidencing a likelihood that Defendant sent at least 100 such letters during the last five years.

43. **Common Questions of Law and Fact, Fed. R. Civ. P. 23(a)(2).** Common questions of law and fact exist as to all members of the putative class. These questions predominate over the questions affecting only individual members. These include, by example only and without limitation:

   a. Whether McLean Mortgage violated the ECOA when it misrepresented that the reason for its adverse action was a withdrawn application; and

   b. Whether McLean Mortgage's violation of the ECOA was willful.

44. **Typicality, Fed. R. Civ. P. 23(a)(3).** Plaintiffs' claims are typical of the claims of each putative class member. Plaintiffs are entitled to relief under the same causes of action as other members of the putative class.

45. **Adequacy of Representation, Fed. R. Civ. P. 23(a)(4).** Plaintiffs are adequate representatives of the putative class because: their interests coincide with, and are not antagonistic to, the interests of the members of the putative class they seek to represent; they have retained counsel competent and experienced in such litigation; and they intend to prosecute this action vigorously. The interests of the members of the putative class will be fairly and adequately protected by Plaintiffs and their counsel.

46. **Superiority, Fed. R. Civ. P. 23(b)(3).** Questions of law and fact common to the putative class members predominate over questions affecting only individual members, and a class action is superior to other available methods for fair and efficient adjudication of the controversy. The damages suffered by each member are such that individual prosecution would prove burdensome and expensive give the number of individuals affected by McLean Mortgage's actions. Even if the members of the class themselves could individually afford such litigation, it would be an unnecessary burden on the Courts. Furthermore, individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system presented by the legal and factual issues raised by McLean Mortgage's conduct. By contrast, the class action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based on a single set of proof in a case.

47. **Injunctive and Declaratory Relief Appropriate for the Class, Fed. R. Civ. P. 23(b)(2).** Class certification is appropriate because Mclean Mortgage acted on grounds generally applicable to the class, making appropriate equitable declaratory and injunctive relief with respect to Plaintiffs and the putative class members.

48. As alleged above, Defendant failed to provide each Plaintiff with an adequate and truthful statement of its reasons for taking the adverse action in violation of the ECOA, 15 U.S.C. §1691(d).

49. As a result of Defendant's conduct, Plaintiffs and the class members suffered concrete and particularized injuries, including informational injuries, deprivation of the opportunity to meaningfully challenge Defendant's adverse actions, and increased risk that they were denied for discriminatory purposes.

50. Based on Defendant's failure to provide a notice appropriate under the ECOA, Plaintiffs and the putative class members are further entitled to declaratory and injunctive relief pursuant to Rule 23(b)(2) requiring that McLean Mortgage provide an appropriate notice with the reason for denial of credit to Plaintiffs and the putative class members; that McLean Mortgage be ordered to comply with the ECOA notice provisions in all future similar transactions; and a declaration that Defendant violated the ECOA for each class member.

### COUNT TWO: VIRGINIA EQUAL CREDIT OPPORTUNITY ACT
### Code of Virginia §59.1-21.21:1(D)
### Class Claim

51. Plaintiffs incorporate the paragraphs above as if fully set out herein.

52. **The Virginia ECOA Class**. Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiffs bring this claim for themselves and on behalf of a subclass within the putative ECOA class ("the Virginia ECOA class") of similarly situated individuals initially defined as follows:

> All natural persons who: (1) applied for credit to McLean Mortgage within the preceding four years; (2) had their mailing address within the Commonwealth of Virginia at the time; and (3) were provided with an adverse action notice by Mclean Mortgage that indicated that the principal reason for the denial was a withdrawn application by the borrower.

53. **Numerosity, Fed. R. Civ. P 23(a)(1).** Upon information and belief, Plaintiffs allege that the class members are so numerous that joinder of all is impractical. The names and addresses of the class members are identifiable through the internal business records maintained by McLean Mortgage, and the class members may be notified of the pendency of this action by published and/or mailed notice.

54. **Predominance of Common Questions of Law and Fact, Fed. R. Civ. P. 23(a)(2).** Common questions of law and fact exist as to all members of the putative class. These

questions predominate over the questions affecting only individual members and include those alleged in Count One.

55. **Typicality, Fed. R. Civ. P. 23(a)(3).** Plaintiffs' claims are typical of the claims of each putative class member. Plaintiffs are entitled to relief under the same causes of action as other members of the putative class.

56. **Adequacy of Representation, Fed. R. Civ. P. 23(a)(4).** Plaintiffs are adequate representatives of the putative class because: their interests coincide with, and are not antagonistic to, the interests of the members of the putative class they seek to represent; they have retained counsel competent and experienced in such litigation; and they intend to prosecute this action vigorously. The interests of the members of the putative class will be fairly and adequately protected by Plaintiffs and their counsel.

57. **Superiority, Fed. R. Civ. P. 23(b)(3).** Questions of law and fact common to the putative class members predominate over questions affecting only individual members, and a class action is superior to other available methods for fair and efficient adjudication of the controversy. The damages suffered by each member are such that individual prosecution would prove burdensome and expensive give the number of individuals affected by McLean Mortgage's actions. Even if the members of the class themselves could individually afford such litigation, it would be an unnecessary burden on the Courts. Furthermore, individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system presented by the legal and factual issues raised by McLean Mortgage's conduct. By contrast, the class action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based on a single set of proof in a case.

58. **Relief Appropriate for the Class, Fed. R. Civ. P. 23(b)(2).** Class certification is appropriate, because McLean Mortgage acted on grounds generally applicable to the class, making appropriate equitable declaratory and injunctive relief with respect to Plaintiff and the putative class members.

59. Defendant willfully and intentionally violated Va. Code § 59.1-21.21:1(D) by taking an adverse action against Plaintiff and the class members' applications for credit without providing each of them with a written statement of the reasons for the action.

60. As a result of Defendant's conduct, Plaintiffs and the class members suffered concrete and particularized injuries, including informational injuries and deprivation of the opportunity to meaningfully challenge Defendant's adverse actions.

61. Based on Defendant's failure to provide a notice appropriate under VECOA to members of the putative class and for its failure to identify the reasons for denial of credit to the members of the putative class, Defendant is liable to Plaintiffs and each of the putative class members for statutory punitive damages of $10,000.00, attorneys' fees, and costs.

### COUNT THREE: VIOLATION OF THE FAIR CREDIT REPORTING ACT
### 15 U.S.C. § 1681b(f)
### Individual Claim

62. Van Dyke restates each of the allegations in the preceding paragraphs as if set forth at length herein.

63. McLean Mortgage violated the FCRA, 15 U.S.C. §1681b(f) by obtaining and using Van Dyke's consumer reports without a permissible purpose to do so.

64. As a result of McLean Mortgage's conduct, Van Dyke suffered actual damages, including without limitation: credit damage, invasion of her privacy, and emotional distress.

65. McLean Mortgage's conduct was willful, rendering it liable for punitive damages in an amount to be determined pursuant to 15 U.S.C. §1681n. In the alternative, it was negligent, entitling Van Dyke to recover under 15 U.S.C. §1681o.

66. Van Dyke is also entitled to recover actual damages, statutory damages, costs and attorneys' fees in an amount to be determined pursuant to 15 U.S.C. §§ 1681n and 1681o.

WHEREFORE, Plaintiffs move for judgment against Defendant for themselves and on behalf of the defined classes for statutory and punitive damages; equitable and injunctive relief; attorneys' fees; costs; and such other specific or general relief the Court finds just and appropriate. Plaintiff Van Dyke further moves for judgment against Defendant as to her individual claims for her actual, statutory, and punitive damages, as well as for her attorneys' fees and costs.

**TRIAL BY JURY IS DEMANDED**.

Respectfully submitted,
**SLYVIA VAN DYKE AND
DOUGLAS ALVARADO**

By: */s/ Kristi C. Kelly*
     Counsel

Kristi Cahoon Kelly, VSB #72791
Andrew J. Guzzo, VSB #82170
KELLY & CRANDALL, PLC
3925 Chain Bridge Road, Suite 202
Fairfax, Virginia 22030
(703) 424-7570 – Telephone
(703) 591-0167 – Facsimile
E-mail: kkelly@kellyandcrandall.com
E-mail: aguzzo@kellyandcrandall.com

Leonard A. Bennett, Esq., VSB #37523
Craig C. Marchiando, Esq., VSB #89736
Elizabeth W. Hanes, Esq., VSB #75574
CONSUMER LITIGATION ASSOCIATES, P.C.
763 J. Clyde Morris Blvd., Ste. 1-A

Newport News, VA  23601
Telephone: (757) 930-3660
Facsimile: (757) 930-3662
Email:  lenbennett@clalegal.com
Email: craig@clalegal.com
Email: elizabeth@clalegal.com

*Counsel for Plaintiffs*